**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN   DIVISION

DAVID MYERS and GLENN        *
McMURTREY                    *
                             *
          Plaintiffs         *
                             *        NO: 4:09CV00725   SWW
VS.                          *
                             *
CENTRAL UNITED LIFE          *
INSURANCE COMPANY            *
                             *
          Defendant          *
                             *

## <u>ORDER</u>

Plaintiffs David Myers and Glenn McMurtrey bring this putative class action for breach of contract against Central United Life Insurance Company ("Central").   Before the Court is Central's motion for summary judgment (docket entries #30, #31, #32), Plaintiffs' response in opposition (docket entries #40, #41), and Central's reply (docket entry #44).  After careful consideration, and for reasons that follow, Central's motion for summary judgment will be granted, and the case will be dismissed with prejudice.

## I.  Background

Central is a health and life insurance company that contracts with independent insurance agents to market and sell the company's insurance policies.  Myers and McMurtrey, independent insurance agents, claim that Central underpaid them renewal commissions due under their agent contracts with Central.

Myers entered a supervising general agent agreement with Central on April 24, 1995,

1

which consists of a base agreement and attached commission schedules.   Under the heading

"COMPENSATION," the third paragraph of the base agreement reads:

> The company will pay the General Agent first year and renewal compensation on premiums paid on policies written and delivered by the General Agent . . . while this Agreement is in full force and effect, at the rates and for the period and on the terms set forth in the attached General Agent's Commission Schedules, subject to the conditions set forth herein.

Docket entry #25, Attach. #7 (Plfs.' Ex. #3) at 1.  A commission schedule for health policies

included in Myers's agreement provides in pertinent part as follows:

PERCENT OF PREMIUM RECEIVED
POLICY YEARS

|  | 1st | 2nd | 3rd | 4th | 5th | 6th-10th | 11th + Years |
|---|---|---|---|---|---|---|---|
| Commission | 55 | 13 | 13 | 13 | 13 | 6.5 | 0 |
| Service Fee | 0 | 0 | 0 | 0 | 0 | 6.5 | 13 |

*Id.*, at 3.

Immediately following the commission schedule is a list of conditions, the first of which

states: "(a) Commissions and renewals shall accrue to the Agent on original premium and as

premium is received by the Company in cash."  *Id.*, at 4.   Hereinafter, the Court will refer to

the foregoing provision as "Condition (a)."

McMurtrey entered three agent agreements with Central: (1) a managing general agent's

agreement dated April 4, 1995;[1] (2) a managing general agent's agreement dated August 11,

1997;[2] and (2) a regional general agent's agreement dated August 21, 1997.[3]  Like Meyers's

---

[1] *See* docket entry#25, Attach. #12 (Plfs.' Ex. #8) at 12.

[2] *See* docket entry #25, Attach. #12 (Plfs.' Ex. #8) at 25.

[3] See docket entry #25, Attach. #12 (Plfs.' Ex. #8) at 2.

2

agreement, McMurtrey's contract entered on April 4, 1995 included a base agreement, a commission schedule, and a list of conditions identical to Myers's in all relevant respects. *See* docket entry #25, Attach. #12 (Plfs.' Ex. #8) at 4, 10, 1, 13, 14, 20, 21.

Plaintiffs claim that during the four-year period prior to the commencement of this lawsuit on September 9, 2009, Central breached a duty to pay them commissions based on a percentage of renewal premiums received. Plaintiffs allege:

> Contrary to the underlying agreements, Central United calculated and paid renewal policy commissions based exclusively on first-year premiums received by the company. Because the renewal premium would typically be higher than the first-year premium, this business practice resulted in substantial underpayment to the agents.

Compl., ¶ 11.

## II.  Central's Motion for Summary Judgment

Central asserts that it is entitled to summary judgment on the merits and because Plaintiffs' claims are time-barred.

### *Choice of Law*

The Court is obliged make an independent determination as to which state's law governs Plaintiffs' claims. Central takes the position that Alabama law controls, *see* docket entry #28, at 26, but Plaintiffs suggest that under Arkansas choice-of-law principles, the Court could conceivably apply the substantive law of Arkansas, Texas, or Alabama. *See* docket entry #41, at 8 n.1.

When federal jurisdiction is based on diversity of citizenship, a federal court looks to the choice-of-law principles of the forum state–in this case Arkansas--and applies those principles as the forum state would. *Simpson v. Liberty Mut. Ins. Co.*, 28 F.3d 763, 764 (8th Cir. 1994). In

contract actions, when, as in this case, the agreement does not specify the law to be applied, Arkansas Courts have applied the "significant contacts" test, which requires an inquiry into the nature and quantity of each state's contacts with the transaction at issue. *Fuller v. Hartford Life Ins. Co.,* 281 F.3d 704, 706 (8th Cir. 2002); *Southern Farm Bureau Casualty Ins. Co. V. Craven,* 79 Ark. App. 423, 89 S.W.3d 369 (2002). "In cases not involving an effective choice of law by the parties, the following factors are relevant to the determination of which state has the most significant relationship to a particular case: 1) the place of contracting; 2) the place of negotiation of the contract; 3) the place of performance; 4) the location of the subject matter of the contract; 5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Crisler v. Unum Insurance Co. of America,* 366 Ark. 130, 133, 233 S.W.3d 658, 660 (2006)(citing Restatement (Second) Conflict of Laws § 188 (1971)).

Central, incorporated under Arkansas law, has a principal place of business in Houston, Texas. Central has no employees or offices in Arkansas, and it does not appear that Arkansas has any connection to the formation or performance of Plaintiffs' agent agreements. Although the Court has no information as to the place of contracting or negotiation, it is undisputed that Plaintiffs are residents of Alabama, and they sold Central's policies almost exclusively in that state. *See* docket entry #28 (Myers Dep. at 11, 79); *see also* Compl., ¶¶ 3-4.

Based on the information available, the Court finds that either Alabama or Texas has the most significant relationship to the contracts at issue and that no significant events took place in Arkansas. Additionally, for reasons that follow, the Court finds that under either Alabama or Texas law, Plaintiffs' claims are not time-barred, but Central is entitled to summary judgment on the merits.

### *Statute of Limitations*

It is undisputed that Myers and McMurtrey were aware, at least by October 2000, that renewal commissions they received from Central did not increase with increases in premium rates and remained a percentage of the original premium amount.  It is also undisputed that, as early as October 2000, Myers and McMurtrey believed that Central was underpaying them renewal commissions.

Central asserts that Plaintiffs' claims are time-barred because they waited a decade, if not longer, to bring this action.  Under Alabama law, the statute of limitations for contract actions is six years, *see* Ala. Code. § 6-2-34(9), and Texas law establishes a four-year statute of limitations for an action on a written contract, *see* Tex. Civ. Prac. & Rem. Code § 16.004(a)(3).  Under either Alabama or Texas law, the statute of limitations begins to run when the cause of action accrues, and a cause of action for breach of contract accrues when the breach occurs. *See Mississippi Valley Title Ins. Co. v. Hooper*, 707 So. 2d 209, 213 (Ala. 1997); *Stine v. Stewart,* 80 S.W.3d 586, 592 (Tex. 2002).

Plaintiffs argue that Central had a duty to pay them renewal commissions each time it received renewal premium payments and that a separate cause of action for breach of contract accrued each time Central underpaid them renewal commissions.  Central, however, takes the position that Plaintiffs have a single claim that began to run in 2000, when Plaintiffs discovered that Central computed their renewal commissions based on the original premium amount.  According to Central, Plaintiffs have a single claim for breach of contract because the alleged breach stemmed from Central's consistently-applied interpretation of the underlying agreements.

Both Alabama and Texas law provide that if a contract is severable and calls for separate

payments, a cause of action arises for each alleged breach.  *See AC, Inc. v. Baker*, 622 So. 2d 331, 334 (Ala. 1993); *F.D. Stella Products Co. v. Scott*, 875 S.W.2d 462, 465 (Tex. App. Austin 1994).  Here, Plaintiffs' agent agreements clearly provide that commissions "shall accrue to the Agent . . . as premium is received by the Company in cash," and Plaintiffs claim that from 2005 through 2008, Central underpaid them commissions that became due as renewal premiums were received for cancer policies that they sold pursuant to their agent agreements.   Under either Alabama or Texas law, Plaintiffs have separate causes of action for underpaid commissions, which accrued each time that Central allegedly failed to pay the full amount of renewal commissions due.  In sum, the Court finds that Central is not entitled to summary judgment under a theory that Plaintiffs have a single cause of action that is time-barred.

### The Merits

Central also seeks summary judgment on the merits, arguing that  Myers's and McMurtrey's agent agreements clearly and unambiguously provide for the payment of commissions based on original premium amounts–not on the amount of higher premiums paid as a result of rate increases in later policy years.  Central argues that any other interpretation ignores Condition (a), which provides: "Commissions and renewals shall accrue to the Agent on original premium and as premium is received by the Company in cash."   Docket entry #25, Attach. #7 (Plfs.' Ex. #3) at 4.

"Summary judgment is appropriate in a breach of contract action where the contract is unambiguous and the facts undisputed." *Gabrielson v. Healthcorp of Eufaula, Inc*., 628 So.2d 411, 415 (Ala. 1993)(citations omitted).  As a general rule, the meaning of an unambiguous contract presents a question of law appropriate for summary judgment, but the interpretation of

6

an ambiguous contract term presents a question of fact, thereby precluding summary judgment.

*See McCormack v. Citibank, N.A.,* 100 F.3d 532, 538 (8th Cir. 1996)(citation omitted); *see also McCollough v. Regions Bank,* 955 So. 2d 405, 410 (Ala. 2006). A contract is ambiguous if, after applying established rules of contract interpretation, it is reasonably susceptible to more than one meaning; but if only one reasonable meaning clearly emerges, the contract is unambiguous. *See Ex parte Gardner,* 822 So.2d 1211, 1217 (Ala. 2001)(citations omitted); *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 157 (1951).

Plaintiffs contend that Condition (a) establishes "the date or dates when the right to commissions first comes into existence (*i.e.* 'accrues')." Docket entry #35, at 15. According to Plaintiffs, Condition (a) requires that (1) first-year commissions accrue to the agent when original premium is paid and (2) renewal commissions accrue to the agent when renewal premium is received by the company. *Id.* Plaintiffs further contend that Condition (a) "also means that renewal commissions accrue on renewal premiums as premium is received by the company." *Id.*

Central, on the other hand, maintains that Condition (a) "addresses both *ho*w and *when* commissions are calculated–original commissions and renewal commissions 'accrue' on the 'original premium' when the 'premium is received' by the Defendant." Docket entry #44, at 7. In other words, Central interprets Condition (a) to mean that first-year *and* renewal commissions shall accrue to the agent as a percentage of the original premium when premium payments are received by the company.

Under Plaintiffs' interpretation, the phrase "on the original premium" speaks to *when* first-year commissions "shall accrue to the agent" and provides that the agent's right to first-year

commissions arises when the original premium is paid.  However, the compound subject of

Condition (a)--commissions *and* renewals--refers to commissions arising from first-year

premiums *and* commissions arising from renewal premiums.  Given the sentence structure of

Condition (a), "commissions" and "renewals" must be accorded equal treatment.  As such, if "on

the original premium" speaks to *when* commissions accrue, first-year *and* renewal commissions

accrue to the agent when the original premium is paid.  Such a reading is contrary to Plaintiffs'

position that renewal commissions accrue to the agent when renewal premiums are received by

the company, and it conflicts with other contract provisions indicating that Central's obligation

to pay renewal premiums is triggered by the receipt of renewal premiums.[4]

Furthermore, under Plaintiffs' interpretation, the phrases  "on the original premium" and

"as premium is received by the company" mean the same thing and have the same effect--both

require that commissions and renewals accrue to the agent when premiums payments are

received by the company.  It is not reasonable to assume that the phrase "on the original

premium" is without a useful purpose.  *See* Restatement (Second) of Contracts section

203(stating that "an interpretation which gives a reasonable, lawful, and effective meaning to all

the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of not

effect").  In sum, the Court finds that Condition (a) is not reasonably susceptible to Plaintiffs'

---

[4]One such provision is included in the list of conditions that follow the health policy
commission schedule, and it reads as follows:

> (e) Commissions on premiums paid to or deposited with the Company in advance
> shall not be allowed until such premiums shall become due, and are paid according
> to the premium due dates specified in the original policy or policies, except when the
> Company, at it sole discretion, shall elect to pay such commissions sooner.

Docket entry #25, Ex. #3

proposed construction.

Central maintains that the phrase "on original premium" expresses *how* commissions and renewals "shall accrue to the agent."  Under Central's interpretation, the preposition "on" is used to indicate that commissions and renewals shall accrue to the agent *based on* the original premium amount–that the original premium is the fixed amount on which commissions and renewals shall accrue to the agent.  Although the short-hand language employed is not ideal, it is not ambiguous, and the Court finds that Central's interpretation is reasonable.  *See Green v. Merrill*, 308 So. 2d 702, 704 (Ala. 1975)(stating that a court cannot refine away the terms of the contract that are expressed with sufficient clarity to convey the intent and meaning of the parties and must enforce an agreement as written); *see also Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex.2003)(explaining that lack of clarity does not create an ambiguity and a contract is not ambiguous simply because the parties advance conflicting interpretations).

Plaintiffs argue that Central's interpretation is contrary to the heading set forth in the health policy commission schedules, which precede Condition (a).  The commission rates set forth in the commission schedules appear under the heading "PERCENT OF PREMIUM RECEIVED-POLICY YEARS."   Plaintiffs note that the schedules do not indicate that "PREMIUM RECEIVED" refers to the first-year or original premium only, and they argue that the absence of the words "original" or "first-year" in the heading is fatal to Central's interpretation.  The Court disagrees.

Parts of a contract must be read together and the contract construed so that all of its parts harmonize, if that is possible, and giving effect to one clause to the exclusion of another on the

same subject, where the two are reconcilable, is error.  Viewing the contract as a whole, the

Court finds no conflict between Condition (a), as interpreted by Central, and other pertinent

provisions.   Under the heading "COMPENSATION," the third paragraph of the parties' base

agreement provides that Central will pay "first year and renewal compensation on premiums paid

on policies written and delivered by the General Agent . . . . "   Although the provision provides

that Central will pay compensation on "premiums paid," it does not specify that renewal

compensation will be calculated as a percentage of the total premium payment for each period,

including premium increases.  Instead, paragraph three provides that first-year and renewal

compensation will be paid "at the rates and for the period and on the terms set forth in the

attached . . . Commission Schedules, *subject to the conditions set forth herein*."   Docket entry

#25, Ex. #3(emphasis added).

   In harmony with paragraph three of the base agreement, the heading of the commission

schedule indicates that commissions will be calculated as a "PERCENT OF PREMIUM

RECEIVED," and the schedule sets forth rates or percentages for specific policy years.

However, the schedule does not specify whether commissions will be calculated as a percentage

of the original premium received or the total premium received for each policy year, including

premium increases.

   Condition (a) is the single, substantive provision of the parties' agreements that addresses

whether commissions will be calculated as a percentage of the original premium or as a

percentage of the total premium received for each policy year.  Rather than conflict with other

contract provisions that address commissions, Condition (a) clarifies that first year and renewal

commissions shall accrue to the agent based on the original premium.  In order to follow

Plaintiffs' construction, one must interpret paragraph three and the commission schedule heading in isolation and ignore the plain language of Condition (a).

The Court finds that, reading Plaintiffs' agent agreements as a whole, Condition (a) has only one reasonable meaning–that first year and renewal commissions accrue to the agent based on the original premium amount and as premium payments are received by the company in cash. Even if the reference to "premiums paid" in paragraph three and the heading "PERCENT OF PREMIUM RECEIVED" in the commission schedule were somehow inconsistent with a condition that first- year and renewal premiums shall accrue to the agent based on the original premium, specific substantive portions of a contract control over general provisions, and mere recitals should be reconciled with the operative clauses, so far as possible.  *See ERA Commander Realty, Inc. v. Harrigan*, 514 So.2d 1329, 1335 (Ala. 1987)("When there is a conflict in a contract, the specific substantive provisions control over general provisions.").

 Given the Court's findings, there are no genuine issues for trial, and Central is entitled to summary judgment.

## III.

For the reasons stated, Defendant's motion for summary judgment (docket entry #30) is GRANTED.  Pursuant to the judgment entered together with this order, this case is DISMISSED WITH PREJUDICE and all pending motions are DENIED AS MOOT.

IT IS SO ORDERED THIS 1ST  DAY OF AUGUST, 2011.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE